UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DWAYNE IVERY,

               Plaintiff,

    vs.

ALEXANDER C. BALDAUF,
RICKEY J. HARRIS, JR.,
JAMES M. SHEPPARD and
CITY OF ROCHESTER,

                    Defendants.

_____

**ANSWERING AFFIDAVIT AND RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**14-CV-6041-L**

STATE OF NEW YORK)
COUNTY OF MONROE) ss:

       Charles F. Burkwit, being duly sworn, deposes and says:

       1.    I am an attorney at law, duly licensed to practice my profession in the State of New York and am the attorney of record for the Plaintiff herein, and as such, I am fully familiar with the facts and circumstances of this action.

       2.    I give this Answering Affidavit and Response To Defendants' Statement of Undisputed Facts In Opposition To Defendants' Motion For Summary Judgment pursuant to FRCP Rule 56.

       3.    Plaintiff admits a Complaint was filed on or about January 27, 2014 alleging various claims under 42 USC 1983, 1985, 1988 and New York State Law. (See Complaint attached as Exhibit A – Defendants' Statement of Undisputed Facts).

4.    Plaintiff admits that Defendants filed their Answer denying pertinent allegations and asserting Affirmative Defenses. (See Defendants' Answer attached as Exhibit B – Defendants' Statement of Undisputed Facts).

5.    Plaintiff admits that on August 17, 2013, Plaintiff's girlfriend, Winnette Delancy, called 911 during an argument between her and Plaintiff. (**Exhibit A** – Delancy Dep., pg. 10, line 22 to pg. 11, line 5).

6.    Deny that during the 911 call, Plaintiff could be heard screaming profanities since Defendant Baldauf did not hear Plaintiff screaming. Defendant Baldauf testified that he was told by dispatch "that there was family trouble at 1509" and a male was heard yelling in the background "I don't give a fuck about the police", or something like that, "I'll go to jail". (**Exhibit B** – Baldauf Dep., pg. 40, lines 15-20). Defendant Baldauf acknowledged that he did not remember what the rest of the call was, other than it was a male-versus-female family trouble. (**Exhibit B** – Baldauf Dep., pg. 40, lines 20-22).

7.    Admit that Ms. Delancy testified that during the 911 call before the police arrived, Plaintiff Ivery was very upset (**Exhibit A** – Delancy Dep. Pg. 10, lines 10-24). By the time the police arrived, Plaintiff Ivery and Ms. Delancy had calmed down as they had finished putting Plaintiff's clothes in his truck. (**Exhibit A** – Delancy Dep., pg. 12, lines 14-19). When Defendant Baldauf arrived, Plaintiff Ivery and Ms. Delancy were not arguing but were trying to tell him what happened. (**Exhibit A** – Delancy Dep. Pg. 14, lines 11-15). When the police arrived, Plaintiff Ivery and Ms. Delancy were calm. (**Exhibit A** – Delancy Dep. Pg. 40, lines 17-19). When Defendant Baldauf helped Ms. Delancy remove the plates from the truck, Plaintiff Ivery was very calm and had no attitude. (**Exhibit A** – Delancy Dep. Pg. 18, lines 7-13).

8.    Admit that Ms. Delancy accused Plaintiff Ivery of cheating on her, that she was putting Plaintiff's clothes in his car and was throwing him out. (**Exhibit C** – Ivery Dep. Pgs. 19, 33, lines 4-24). Ms. Delancy was breaking up with Plaintiff Ivery and brought his clothes to his home. (**Exhibit A** – Delancy Dep. Pg. 9, lines 10-13).

9.    Admit that upon arriving at 1509 Main Street in the City of Rochester, Defendants Baldauf and Harris calmly spoke with Ms. Dalancy and Plaintiff Ivery in a non-threatening manner. (**Exhibit A** – Delancy Dep., pg. 13, lines 1-25, **Exhibit C** – Ivery Dep. Pg. 23, lines 21-25).

10.    Admit that Defendant Baldauf assisted Ms. Delancy with taking the license plates off Plaintiff Ivery's car. (**Exhibit A** – Delancy Dep., pg. 16, lines 9-10). Plaintiff Ivery agreed Ms. Delancy could take the plates since the vehicle was registered to her. (**Exhibit C** – Ivery Dep. Pg. 23, line 21 to pg. 24, line 6).

11.    Deny that Plaintiff Ivery was told to go back inside his home to avoid further confrontation and deny that Plaintiff Ivery continued to come back outside to further the altercation with Ms. Delancy. (See Ivery Affidavit, paragraph 7). By the time the police arrived, Plaintiff Ivery and Ms. Delancy had calmed down. (**Exhibit A** – Delancy Dep., pg. 12, lines 14-19). When Defendant Baldauf arrived, Plaintiff and Ms. Delancy were not arguing. (**Exhibit A** – Delancy Dep. Pg. 14, lines 11-15). In fact, everything was quiet when Ms. Delancy walked over by the truck while Defendant Baldauf was taking the plates off. (**Exhibit A** – Delancy Dep. Pg. 16, lines 3-10). At no point did the officers tell Plaintiff Ivery he should go into the house because they (Plaintiff and Ms. Delancy) were not arguing. (**Exhibit A** – Delancy Dep., pg. 17, lines 20-23). Ms. Delancy was shocked that Plaintiff Ivery was arrested for resisting arrest and coming after her because Plaintiff Ivery did not

3

come after her. (**Exhibit A** – Delancy Dep., pg. 29, lines 10-14). When Plaintiff Ivery was walking forward to the truck, he did not try to hurt, strike or push Ms. Delancy and that is why she couldn't understand why he was arrested. (**Exhibit A** – Delancy Dep., pg. 42, lines 7-11). Ms. Delancy never had any negative, violent or physical contact with Plaintiff Ivery. (**Exhibit A** – Delancy Dep., pg. 31, line 24 to pg. 32, line 3). Plaintiff Ivery was not angry that Ms. Delancy was taking the plates off his truck since this was not the first time she took them off. (**Exhibit A** – Delancy Dep., pg. 36, lines 19-22).

        12.    Deny that while Officer Baldauf was taking off the license plates for Ms. Delancy in a dark backyard at approximately 10:30 p.m., Plaintiff Ivery aggressively approached Ms. Delancy, who had already stated that Mr. Ivery had been physical with her. When Defendant Baldauf helped Ms. Delancy remove the plates from the truck, Plaintiff Ivery was very calm and had no attitude. (**Exhibit A** – Delancy Dep., pg. 18, lines 7-13). As Plaintiff Ivery was walking forward to the truck, he did not try to hurt, strike or push Ms. Delancy and that is why she cannot understand why he was arrested. (**Exhibit A** – Delancy Dep., pg. 42, lines 7-11). Ms. Delancy was shocked that Plaintiff Ivery was arrested for resisting arrest and coming after her because Plaintiff Ivery did not come after her. (**Exhibit A** – Delancy Dep., pg. 29, lines 10-14). Ms. Delancy never had any negative, violent or physical contact with Plaintiff Ivery. (**Exhibit A** – Delancy Dep., pg. 31, line 24 to pg. 32, line 3). When Ms. Delancy was told that the Information Defendant Baldauf signed said that Defendant, Dwayne, did "shove me in an attempt to get by me to get at his girlfriend", Ms. Delancy stated "That's a lie". (**Exhibit A** – Delancy Dep., pg. 48, line 20 to pg. 49, line 3).

13.   Admit that Defendant Baldauf testified that as Plaintiff Ivery was walking alongside the car, he had never been pat frisked, that "it was dark out there" and that Plaintiff Ivery was belligerent. (**Exhibit B** – Baldauf Dep., pg. 58, lines 13-22) but deny this occurred.

14.   Deny that Defendant Baldauf stopped between Plaintiff Ivery and Ms. Delancy fearing Plaintiff would assault her. Defendant Harris did not find Plaintiff Ivery to be a physical threat as Plaintiff Ivery was walking along the driver's side of the car. (**Exhibit D** – Harris Dep., pg. 55, lines 21-24). Prior to the altercation, Defendant Harris did not have any reason to believe that Plaintiff Ivery would physically threaten anybody. (**Exhibit D** – Harris Dep., pg. 56, lines 10-14). When Defendant Baldauf jumped up and tried to grab Plaintiff Ivery's hand, Plaintiff Ivery only had asked Defendant Baldauf if it was ok if the officers could go to Ms. Delancy's house to get his televisions. (**Exhibit A** – Delancy Dep., pg. 16, lines 12-16). Plaintiff was very calm and had no attitude when Defendant Baldauf helped Ms. Delancy remove the plates from the truck. (**Exhibit A** – Delancy Dep., pg. 18, lines 7-13). When the police came, Ms. Delancy and Plaintiff Ivery were calm at that point. (**Exhibit A** – Delancy Dep., pg. 40, lines 17-19). As Plaintiff Ivery was walking forward to the truck, he did not try to hurt, strike or push Ms. Delancy and that is why she does not understand why he was arrested. (**Exhibit A** – Delancy Dep., Pg. 42, lines 7-11). When Ms. Delancy was told that the Information Defendant Baldauf signed said that the defendant, Dwayne, did "shove me in an attempt to get by me to get at his girlfriend", she clarified "That's a lie". (**Exhibit A** – Delancy Dep., pg. 48, line 20 to pg. 49, line 3). Defendant Baldauf acknowledged that when Plaintiff Ivery came out, he was not physically threatening and he does not recall if Plaintiff Ivery was yelling any obscenities at this time.

(**Exhibit B** – Baldauf Dep. Pg. 56, lines 4-11, pg. 57, lines 5-7). Defendant Baldauf had an attitude, was hollering and said "Be quiet, both of you" in an angry voice. (**Exhibit A** – Delancy Dep., pg, 14, lines 5-19). Defendant Baldauf seemed like he was upset about something the way he yelled at Plaintiff Ivery and Ms. Delancy. (**Exhibit A** – Delancy Dep., pg. 19, lines 13-19).

Deny that Plaintiff put his hand on Officer Baldauf in a shoving motion. Rather, Defendant Baldauf jumped up, tried to grab Plaintiff Ivery's hand which Plaintiff pulled back. (**Exhibit A** – Delancy Dep., pg. 16, lines 12-16). Ms. Delancy clearly saw everything since she was about ten feet away from Plaintiff Ivery and Defendant Baldauf when the physical altercation happened. (**Exhibit A** – Delancy Dep., pg. 28, lines 4-11). Ms. Delancy clarified that Plaintiff Ivery just pulled his hand away from Defendant Baldauf when he tried to grab his hand. (**Exhibit A** – Delancy Dep., pg. 28, lines 16-23). When Ms. Delancy was told that the Information Defendant Baldauf signed said that the defendant, Dwayne, did "shove me in an attempt to get by me to get at his girlfriend", she clarified "That's a lie". (**Exhibit A** – Delancy Dep., pg. 48, line 20 to pg. 49, line 3). At no time did Plaintiff Ivery engage the Defendant officers and try tackling either of them. (**Exhibit A** – Delancy Dep., pg. 49, lines 15-22). Defendant Harris testified that he didn't see whether or not he (Plaintiff) shoved or pushed Defendant Baldauf. (**Exhibit D** – Harris Dep., pg. 47, line 11 to pg. 48, line 3). Defendant Baldauf initially testified that Plaintiff Ivery got up in his face and gave him "a little shove" which did not cause him to move backwards. (**Exhibit B** – Baldauf Dep., pg. 61, lines 5-13). Defendant Baldauf subsequently contradicted his testimony by stating that he does not believe Plaintiff Ivery shoved him. (**Exhibit B** – Baldauf Dep., pg. 95, lines 10-15). Defendant Baldauf acknowledged that instead of using

6

the word shove, it was more of a poke that Plaintiff did. (**Exhibit B** – Baldauf Dep., pg. 95, lines 20-24). Defendant Baldauf described it as a provoking poke with his fingers. (**Exhibit B** – Baldauf Dep., pg. 61, lines 5-13). Defendant Baldauf testified that he believed Plaintiff Ivery poked him to provoke a fight. (**Exhibit B** – Baldauf Dep., pg. 62, lines 2-5). Defendant Baldauf acknowledged that he would be considered the victim concerning the Harassment 2nd charge for the poking towards him. (**Exhibit B** – Baldauf Dep. Pg. 66, lines 2-21). Defendant Baldauf's narrative in the Incident Report (See Exhibit C – Defendants' Statement of Undisputed Facts) is false since it indicates Plaintiff Ivery shoved him when Plaintiff did not shove him. Defendant Harris did not see whether or not Plaintiff Ivery shoved or pushed Defendant Baldauf and he testified "I did not see any of that, so you'd have to ask Officer Baldauf about his arrest". (**Exhibit D** – Harris Dep., pg. 47, line 11 to pg. 48, line 3).

Deny that Defendant Baldauf told Plaintiff he was under arrest. Defendants Baldauf and Harris did not tell Plaintiff Ivery that he was under arrest. (**Exhibit A** – Delancy Dep., pg. 17, lines 15-19). Defendant Baldauf did not say Plaintiff Ivery was under arrest because he didn't have a reason to arrest Plaintiff in the first place. (**Exhibit A** – Delancy Dep., pg. 48, lines 9-15). Before Defendant Baldauf jumped up and started this attack, nobody ever mentioned to Plaintiff Ivery that he was under arrest. (**Exhibit C** – Ivery Dep., pg. 35, lines 3-9).

15.   Deny that Defendant Baldauf grabbed Plaintiff's arm but Plaintiff pulled away and ran. Defendant Baldauf tried to grab Plaintiff Ivery's hand which Plaintiff pulled back. (**Exhibit A** – Delancy Dep., pg. 16, lines 12-16). Plaintiff Ivery just pulled his hand away from Defendant Baldauf when he tried to grab his hand and started in the back yard

when Defendant Baldauf came after Plaintiff and grabbed him by his shirt. (**Exhibit A** –
Delancy Dep. Pg. 28, lines 16-23).

16.    Admit that witnesses to this incident testified that Plaintiff ran from
Defendant Baldauf.

17.    Admit that Defendant Baldauf pursued and grabbed the Plaintiff's shirt
but deny Plaintiff Ivery managed to get on top of Defendant Baldauf on the ground. Plaintiff
started going towards the back yard when Defendant Baldauf grabbed Plaintiff's shirt
which went over his head and swung at Plaintiff, punching Plaintiff in the face and causing
Plaintiff to fall to the ground. (**Exhibit A** – Delancy Dep., pg. 16, lines 17-22). Defendant
Baldauf then kept hitting Plaintiff Ivery who was on the ground. (**Exhibit A** – Delancy Dep.,
pg. 16, line 24 to pg. 17, line 2). Defendant Baldauf landed Plaintiff on the ground and was
punching and hitting him in his head and face. (**Exhibit A** – Delancy Dep., pg. 29, lines
19-21). Defendant Harris came over and he handcuffed Plaintiff while Defendant Baldauf
was still hitting him. (**Exhibit A** – Delancy Dep. Pg. 29, lines 21-23). Defendant Baldauf
kicked Plaintiff Ivery in his back when he was on the ground. (**Exhibit A** – Delancy Dep.,
pg. 54, lines 7-10). The surveillance video of the incident shows Plaintiff landing on the
ground with Defendant Baldauf on top of Plaintiff and striking him multiple times. (See
Exhibit A – Ivery Affidavit).

18.    Deny that Defendant Baldauf was eventually able to get on top of Mr.
Ivery who was actively resisting arrest by refusing to put his hands behind his back as
ordered. Defendant Baldauf grabbed Plaintiff's shirt, swung at Plaintiff, punched Plaintiff in
the face causing him to fall to the ground. (**Exhibit A** – Delancy Dep., pg. 16, lines 17-22).
Defendant Baldauf landed Plaintiff on the ground and was punching and hitting him in his

head and face. (**Exhibit A** – Delancy Dep., pg. 29, lines 19-21). Defendant Baldauf then kept hitting Plaintiff who was on the ground. (**Exhibit A** – Delancy Dep., pg. 16, line 24 to pg. 17, line 2). The surveillance video of the incident shows that Defendant Baldauf was on top of Plaintiff after landing him on the ground and struck Plaintiff multiple times while Plaintiff was on the ground. (See Exhibit A – Ivery Affidavit). Defendant Harris came over, got on the ground and put handcuffs on Plaintiff while Defendant Baldauf was still hitting him. (**Exhibit A** – Delancy Dep., pg. 17, lines 3-4, pg. 29, lines 21-23). Defendant Baldauf continued to hit Plaintiff and after he was handcuffed, he stood up and kicked Plaintiff in his head. (**Exhibit A** – Delancy Dep., pg. 30, lines 9-13). At no time did Plaintiff Ivery try to pull away from the Defendant Officers as they were trying to take him into custody. (**Exhibit A** – Delancy Dep., pg. 49, lines 4-10). At no time did Plaintiff Ivery engage the Defendant Officers and try tackling either of them. (**Exhibit A** – Delancy Dep., pg. 49, lines 15-22). Ms. Delancy did not observe Plaintiff Ivery trying to get up and trying to resist arrest. (**Exhibit A** – Delancy Dep., pg. 49, line 23 to pg. 50, line 5).

      19.  Deny that after Plaintiff Ivery was placed in handcuffs, force ended. Defendant Baldauf continued to hit Plaintiff Ivery after he was handcuffed as he stood up and kicked Plaintiff Ivery in the head and there was nothing Ms. Delancy could do. (**Exhibit A** – Delancy Dep., pg. 30, lines 9-13). Ms. Delancy saw Defendant Baldauf kick Plaintiff a couple of times in the head. (**Exhibit A** – Delancy Dep., pg. 30, lines 14-17). She believes Plaintiff Ivery was kicked in the head twice while he was handcuffed. (**Exhibit A** – Delancy Dep., pg. 51, lines 8-14). Defendant Harris said "All right. All right. That's enough" when Defendant Baldauf kicked Plaintiff a couple more times and punched him and then he stopped. (**Exhibit A** – Delancy Dep., pg. 30, lines 19-22). Ms. Delancy believes that

Plaintiff Ivery was punched in the head about three (3) or four (4) times after he was handcuffed. (**Exhibit A** – Delancy Dep., pg. 51, lines 15-20). Defendant Harris just handcuffed Plaintiff Ivery and let Defendant Baldauf beat him. (**Exhibit A** – Delancy Dep., pg. 54, lines 11-12). Defendant Baldauf acknowledged he struck Plaintiff Ivery multiple times and agrees these jabs were substantial forces. (**Exhibit B** – Baldauf Dep., pg. 75, lines 18-19, pg. 76, lines 21-24). Defendant Harris was on the left side of Plaintiff Ivery while Defendant Baldauf was on the right side of Plaintiff delivering jabs to Plaintiff's head. (**Exhibit D** – Harris Dep., pg. 82, line 23 to pg. 83, line 3). Defendant Harris acknowledged that he actually stopped Defendant Baldauf from using any additional force. (**Exhibit D** – Harris Dep., pg. 68, lines 8-14). Defendant Harris watched the video and acknowledged he could see Defendant Baldauf striking Plaintiff multiple times. (**Exhibit D** – Harris Dep., pg. 62, lines 6-11). Plaintiff Ivery was lying on his stomach while Defendant Baldauf was punching him on the right side of his head. (**Exhibit D** – Harris Dep., pg. 62, lines 16-22).

Admit that Plaintiff Ivery was transported to Rochester General Hospital by ambulance where he was seen and then transported to Booking.

20.   Deny that according to Plaintiff Ivery and Ms. Delancy, Defendant Harris never used any force against Plaintiff Ivery. Ms. Delancy testified that Defendant Harris put handcuffs on Plaintiff Ivery. (**Exhibit A** – Delancy Dep., pg. 17, lines 3-4). She testified that Defendant Harris handcuffed Plaintiff Ivery while Defendant Baldauf was still hitting him. (**Exhibit A** – Delancy Dep., pg. 29, lines 21-23). She testified that Defendant Harris handcuffed Plaintiff and let Defendant Baldauf beat him. (**Exhibit A** – Delancy Dep., pg. 54, lines 11-12). Defendant Baldauf falsely stated in his official Addendum Report that he placed him (Plaintiff) in handcuffs. (See Exhibit G – Defendants' Statement of Undisputed

Facts). Plaintiff Ivery remembers feeling a stomp on his head and does not know who placed handcuffs on him. (**Exhibit C** – Ivery Dep., pg. 31, lines 4-6). Defendant Harris admitted that he pushed Plaintiff Ivery off Defendant Baldauf. (**Exhibit D** – Harris Dep. Pg. 52, lines 24-25).   Defendant Harris also described that when Plaintiff started pushing himself up off the ground, the Defendant Officers pushed him back down. (**Exhibit D** – Harris Dep., pg. 59, lines 13-22). Defendant Harris acknowledged he pushed Plaintiff back down. (**Exhibit D** – Harris Dep., pg. 59, lines 23-24). When Defendant Harris was asked what force he used against Plaintiff in effecting his arrest, he replied "I don't remember exactly to my recollection". (**Exhibit D** – Harris Dep., pg. 70, lines 12-16). Defendant Harris acknowledged he assisted in handcuffing Plaintiff and that he attempted to pull Plaintiff's arm out from underneath him. (**Exhibit D** – Harris Dep., pg. 70, lines 18-25). Defendant Harris believes he made a Subject Resistance Report but does not recall what he said in that report. (**Exhibit D** – Harris Dep., pg. 84, lines 13-25). The undersigned has requested a copy of Defendant Harris' Subject Resistance Report during his deposition and in writing and it has not been produced. Defendant Harris acknowledged that he assisted in Plaintiff's arrest. (**Exhibit D** – Harirs Dep., pg. 99, lines 20-24).

21.   Admit that Officer Harris' gave factual testimony concerning the allegations in paragraph 21.

22.   Admit that Defendant Harris testified that it was really dark out so he did not see exactly what's going on when Defendant Baldauf stood up. (**Exhibit D** – Harris Dep., pg. 46, lines 5-14). Deny that Defendant Harris testified Plaintiff was "swinging". Rather, when Defendant Harris was asked what happened next, he testified as to what he saw - "Plaintiff swings out, and he resists arrest or he resists Officer Baldauf trying to effect

an arrest". (**Exhibit D** – Harris Dep., pg. 46, line 21 to pg. 47, line 4).  Admit that Officer

Harris testified that he observed Plaintiff Ivery resisting arrest, running from Officer Baldauf

and "grappling" with Officer Baldauf. Deny Defendant Harris testified it was very dark when

he observed Plaintiff "straddling" Officer Baldauf as this is not noted in the referenced

deposition testimony.

23.    Deny that Plaintiff testified that only Officer Baldauf was involved in any

alleged physical force and that Officer Harris "just watched". When Plaintiff was questioned

about being hit and who hit him, he responded that he was hit with fists and stomped in

the head two or three times, punched in the head several times and one officer, Defendant

Baldauf, did it. (**Exhibit C** – Ivery Dep., pg. 37, line 17 to pg. 38, line 8). Plaintiff Ivery

further testified concerning his shoulder injury when his arm was twisted back and he

thought he heard a pop, a probable break, and then Officer Harris assisted in putting cuffs

on him. (**Exhibit C** – Ivery Dep. Pg. 43, line 24 to pg. 44, line 11). From the foregoing

testimony and the testimony outlined in paragraph 20 above, it is clear that Defendant

Harris did use force in assisting Defendant Baldauf with the arrest and handcuffing of

Plaintiff despite Plaintiff's recollection of the forces used. It is important to note that

Plaintiff's t-shirt was pulled over his head when Defendant Baldauf punched him multiple

times causing him to lose consciousness. (See Ivery Affidavit, paragraph 23).

24.    Admit that Plaintiff was charged with Harassment 2nd and Resisting

Arrest but deny he plead guilty to that charge and received an ACD. Rather, Plaintiff

received an Adjournment In Contemplation of Dismissal (ACD) dismissing those charges.

(**Exhibit C** – Ivery Dep., pg. 48, line 17 to pg. 49, line 7).

### Additional Facts In Opposition to Defendants'
### Motion For Summary Judgment

25.  Defendant Harris has been subject to approximately five to ten Professional Standards Section internal affairs investigations while working for the Rochester Police Department. (**Exhibit D** – Harris Dep. Pg. 12, line 13 to pg. 13, line 4).

26.  Defendant Harris does not remember what any of the use of force allegations against him concerned. (**Exhibit D** – Harris Dep. Pg. 16, line 19 to pg. 17, line 6).

27.  Defendant Harris was in the same academy class with Defendant Baldauf and he worked with him "pretty much all the time" prior to August 17, 2013. (**Exhibit D** – Harris Dep. Pg. 22, lines 17-25).

28.  When Defendant Harris was asked if he ever saw Defendant Baldauf use force against anybody prior to August 17, 2013, he responded "I'm not sure". (**Exhibit D** – Harris Dep. Pg. 24, lines 13-15).

29.  When asked what force he used against Plaintiff Ivery in effecting his arrest, Defendant Harris responded "I don't remember exactly to my recollection". (**Exhibit D** – Harris Dep. Pg. 70, lines 12-16).

30.  Whether or not Plaintiff Ivery's arrest was valid, Defendant Harris' job was to assist Defendant Baldauf. (**Exhibit D** – Harris Dep. Pg. 78, lines 3-8).

31.  Defendant Baldauf has been employed by the Rochester Police Department going on six years. (**Exhibit B** – Baldauf Dep., pg. 5, lines 9-15).

32.  Defendant Baldauf does not believe he was ever investigated by the

Rochester Police Department or the Professional Standards Section regarding the August 17, 2013 incident involving Plaintiff Ivery. (**Exhibit B** – Baldauf Dep., pg. 18, lines 20-24).

33.     Defendant Baldauf has injured suspects while taking them into custody but could not give a certain number. (**Exhibit B** – Baldauf Dep., pg. 22, line 23 to pg. 23, line 6).

34.     Defendant Baldauf acknowledged that he has punched suspects on numerous occasions. (**Exhibit B** – Baldauf Dep., pg. 23, lines 14-21).

35.     Defendant Baldauf acknowledged he was involved in an April 20, 2015 altercation with Delmar Lipford and when he was asked about specific force allegations contained in a "Personal Injury Claim Form", Defendant Baldauf's counsel instructed him not to answer those questions even though it was within the scope of Judge Feldman's Decision and Order dated September 29, 2015. (**Exhibit B** – Baldauf Dep., pg. 26, lines 13-15, pg. 27, line 4 to pg. 30, line 21).

36.     Defendant Baldauf assumes force was used against a suspect when he made arrests with Defendant Harris. (**Exhibit B** – Baldauf Dep., pg. 37, line 24 to pg. 38, line 10).

37.     Defendant Harris was on top of Plaintiff Ivery trying to restrain him. (**Exhibit B** – Baldauf Dep., pg. 72, lines 19-22).

38.     Plaintiff Ivery never punched Defendant Baldauf during the altercation. (**Exhibit B** – Baldauf Dep., pg. 79, lines 9-11).

39.     Defendant Baldauf believes he delivered the jabs to Plaintiff Ivery's face with his bare hands. (**Exhibit B** – Baldauf Dep., pg. 85, lines 5-9).

40.     Defendant Baldauf searched Plaintiff Ivery when he was handcuffed and

nothing was found on Plaintiff's person. (**Exhibit B** – Baldauf Dep., pg. 86, lines 19-24, pg. 87, lines 3-14).

41.     When a sergeant arrived, Defedant Baldauf told him that he punched Plaintiff Ivery three times in the face. (**Exhibit B** – Baldauf Dep., pg. 89, lines 3-17).

42.     Police photographs were taken of Plaintiff Ivery's injuries. (**Exhibit B** – Baldauf Dep., pg. 88, lines 8-10).

43.     Defendant Baldauf knew going into this incident that Plaintiff Ivery had video surveillance at the location. (**Exhibit B** – Baldauf Dep., pg. 89, line 18 to pg. 90, line 3).

44.     The Professional Standards Section of the Rochester Police Department never spoke with Defendant Baldauf about the incident. (**Exhibit B** – Baldauf Dep., pg. 93, lines 7-10).

45.     Defendant Baldauf acknowledged that he does not believe Plaintiff Ivery shoved him in an attempt to get by him to get at his girlfriend. (**Exhibit B** – Baldauf Dep., pg. 95, lines 10-15). This directly contradicts what Defendant Baldauf reported in his narrative and addendum reports to the police incident report. (See Exhibits C & G – Defendants' Statement of Undisputed Facts).

46.     Defendant Baldauf believes that the Rochester Police Department reviews every subject resistance report that is submitted and they can launch investigation on their own volition, if they deem it necessary. (**Exhibit B** – Baldauf Dep., pg. 98, lines 4-10).

47.     To Defendant Baldauf's knowledge, the Rochester Police Department

did not launch their own investigation regarding Plaintiff Ivery's incident. (**Exhibit B** – Baldauf Dep., pg. 98, lines 14-17).

48.    Defendant Baldauf never had discussions with Defendant Sheppard, Chief Ciminelli or Lieutenant Callari regarding this incident. (**Exhibit B** – Baldauf Dep., pg. 98, line 18 to pg. 99, line 2).

49.    Plaintiff spoke with Defendant Sheppard, told him what happened to him at the hands of the Defendant Officers, was told by Defendant Sheppard that he "was going to look into this" but never did hear back from Defendant Sheppard or anyone from the City of Rochester or the Rochester Police Department. (See Ivery Affidavit, paragraph 35).

50.    The City of Rochester and its Police Department have failed to investigate, suspend, terminate and/or reprimand police officers in excessive force cases which are not presented through the internal complaint process but rather, presented through litigation against Defendant City of Rochester and its police officers in the Western District of New York. This occurred in the cases of Robinn Turner v. City of Rochester, 11-CV-6200L, Alesha Jones et. al. v. City of Rochester et al., 12-CV-6082L, Theodore E. Loria v. City of Rochester et al., 12-CV-6229, Zachary Adams v. City of Rochester, et. al., 12-CV-06237 and Cardell Libbett v. City of Rochester, et. al., 12-CV-6697. It is respectfully submitted that the City of Rochester and the Rochester Police Department's failure to investigate, suspend, terminate and/or reprimand police officers in such excessive force cases, including Plaintiff's, condones such behavior, promotes a policy, custom and practice of deliberate indifference which allows its police officers to escape liability and accountability for unlawful excessive force and/or misconduct and allows it to continue.

**WHEREFORE**, your deponent respectfully prays for an Order denying Defendants' motion for summary judgment in in its entirety and grant such other and further relief as the Court deems just and proper.

s/Charles F. Burkwit, Esq.
Charles F. Burkwit, Esq.

Sworn to before me this
16th day of March 2017.

s/Barbara Peck
Notary Public