UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DWAYNE IVERY,

                                    Plaintiff,

                    v.

ALEXANDER C. BALDAUF, et al.,

                                    Defendants.

_____

DECISION AND ORDER

14-CV-6041L


        On August 17, 2013, plaintiff Dwayne Ivery was arrested by two officers of the Rochester

(New York) Police Department ("RPD").  The arrest followed a 911 call by plaintiff's girlfriend,

in connection with an argument between her and plaintiff.

        On January 27, 2014, plaintiff brought this action against the City of Rochester ("City"),

the two arresting officers (Alexander Baldauf and Rickey Harris), and James Sheppard, who at

the time of the arrest was the Chief of Police for the City.

        Plaintiff has asserted ten claims against the defendants, as set forth in more detail below.

Defendants have moved for summary judgment.


                            **BACKGROUND**

        On the evening of August 17, 2013, Officers Baldauf and Harris arrived at plaintiff's

residence on East Main Street in Rochester, in response to a 911 call.  That call had been placed

by plaintiff's girlfriend, Winnette Delancy, during an argument between her and plaintiff.  *See*

Defendants' Statement of Undisputed Facts ("DSUF"), Dkt. #28-2, ¶ 5; Plaintiff's Response to Defendants' Statement of Undisputed Facts ("PRDSUF"), Dkt. #31 ¶ 5. Not surprisingly, the parties' versions of what transpired next differ in some respects.

What is undisputed is that at one point after the officers arrived, Baldauf agreed to Delancy's request that he help remove the license plates from a truck in the driveway. Delancy told the officers that the truck was registered in her name, and that she wanted the plates removed. Plaintiff testified at his deposition that he held title to the car, but that it was registered in Delancy's name, and that he agreed to let her take the plates. Ivery Depo. (Dkt. #28-3 Ex. F) at 24 lines 3-6.

Plaintiff alleges that as Baldauf was removing the front plate, plaintiff "calmly and slowly" approached Baldauf to ask him a question, and that Baldauf responded by grabbing plaintiff and punching him in the head. Complaint ¶¶ 26-28.

Defendants contend that the officers "calmly spoke to Ms. Delancy and Mr. Ivery in a non-threatening manner," but that plaintiff "aggressively approached" Delancy, "while acting in a belligerent manner." According to the Incident Report filed after this incident, plaintiff was screaming obscenities at the time. Dkt. #28-3 at 40. Defendants allege that when Baldauf stepped between plaintiff and Delancy, in order to protect Delancy, plaintiff shoved or poked him.

Regardless of how it started, it is not disputed that a physical altercation occurred between Baldauf and plaintiff. That altercation was captured, to some degree, on video taken by a security camera on the adjacent building. Although the image resolution is not the best, what can be seen is that while Baldauf and Delancy are at the front of a parked vehicle in the driveway,

plaintiff walks toward them. At that point, Harris is standing near the rear of the vehicle, on the right side of the screen.

Because of the distance of the parties from the camera, the lighting conditions (the incident occurred after dark), and the general lack of resolution in the video, the images are not crystal clear, but it can be seen that a scuffle breaks out between Baldauf and plaintiff. Precisely what precipitated the scuffle is not obvious from the video, which has no audio.

When the scuffle begins, Baldauf attempts to grab plaintiff, who eludes Baldauf's grasp and runs around the far side of the vehicle. Baldauf gives chase, and he and Harris, who moves to intercept plaintiff, bring plaintiff to the ground.

At this point, the glare from one officer's flashlight further obscures the images, but one of the officers (presumably Baldauf) can be seen cocking his arm back and punching plaintiff several times, while plaintiff is on the ground. It is not clear from the video whether plaintiff is physically struggling while this is occurring. But after several seconds, plaintiff is subdued and led away, on foot, apparently in handcuffs. The entire incident, from the start of the scuffle near the front of the vehicle to plaintiff being subdued and taken away, lasts roughly half a minute.

According to plaintiff, he did not shove or menace Baldauf or Delancy, but simply walked toward them, and only ran away after Baldauf's unprovoked, unwarranted attempt to grab him. Plaintiff also alleges that Baldauf unnecessarily punched and kicked him while plaintiff was on the ground and not resisting. Plaintiff alleges that Harris eventually said, "All right, all right, that's enough," and that Baldauf finally stopping hitting him. Plaintiff alleges that he sustained various physical injuries as a result of Baldauf's actions. As stated, defendants contend

that plaintiff initiated the confrontation, and that Baldauf used no more force than was reasonably necessary to subdue plaintiff.

After his arrest, plaintiff was charged with harassment in the second degree and with resisting arrest. He received an adjournment in contemplation of dismissal ("ACD") from the state court, as to both charges. DSUF ¶ 24; PRDSUF ¶ 24. Apparently the charges were later dismissed, as is the norm.

Based on these events, plaintiff filed suit under 42 U.S.C. §1983, asserting ten claims: (1) a § 1983 claim against Baldauf, Harris and the City for false arrest and illegal search and seizure of plaintiff's person; (2) a § 1983 claim against Baldauf, Harris and the City for excessive force, in violation of the Fourth Amendment to the United States Constitution; (3) a claim (ostensibly premised on § 1983) against Baldauf and Harris for conspiracy to violate plaintiff's civil rights; (4) a § 1983 claim against the City for failure to adequately train, discipline or supervise its police officers with respect to conspiracies to deprive individuals of their constitutional rights; (5) a § 1983 claim against the City and Sheppard, which is similar to Count 4, but which relates to the use of excessive force, unlawful arrests, and so on; (6) a state-law claim against Baldauf, Harris and the City for battery; (7) a state-law claim against Baldauf, Harris and the City for assault; (8) a state-law claim against Baldauf, Harris and the City for intentional infliction of emotional distress, as well as (9) a similar claim for negligent infliction of emotional distress; and (10) a state-law claim for negligence against all defendants. The individual defendants are sued in both their personal and official capacities.

**DISCUSSION**

**I.      Motions for Summary Judgment:  General Principles**

A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only those "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party moving for summary judgment is not required to prove the absence of genuine issues of material fact.  The movant's burden may be discharged by simply showing that there is a lack of evidence to support the non-moving party's case.  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant satisfies that initial burden, the party opposing the motion is required to "make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial."  *Id.* at 322.  When deciding whether to grant summary judgment, the court must view the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor.  *Consarc Corp. v. Marine Midland Bank*, 996 F.2d 568, 572 (2d Cir. 1993); *Allen v. Ford*, 880 F.Supp.2d 407, 408 (W.D.N.Y. 2012).

## II.    Application to this Case

### A.    Section 1983 Claims in General

Section 1983 provides a right of action for persons aggrieved by the deprivation of their rights secured by either the Constitution or the laws of the United States.  42 U.S.C. § 1983.  *See Chroscielewski v. Detective Milton Calix*, No. 16 CV 6640, 2018 WL 324872, at *4 (E.D.N.Y. Jan. 8, 2018) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir.), *cert. denied*, 506 U.S. 819 (1992)) (other citations omitted).  In order to establish a claim under § 1983, the plaintiff must show that the defendants, acting under the color of state law, deprived the plaintiff of a federal right.  42 U.S.C. § 1983.  *See Candelario v. City of New York*, 539 Fed.Appx. 17, 17 n.1 (2d Cir. 2013) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

There is no dispute here that defendants Baldauf and Harris were acting under color of state law at the time of plaintiff's arrest, since they were in uniform and acting within the scope of their employment as police officers.  The primary questions before the Court, then, involve whether plaintiff was deprived of a constitutional right, whether there are issues of fact related to that question, and whether defendants have established defenses to plaintiff's claims.

### B.    False Arrest

Plaintiff's first cause of action is captioned as a claim for "illegal search and seizure of plaintiff Dwayne Ivery's person."  Count One also alleges that defendants denied plaintiff his right to be free from false arrest.  This claim is asserted against Baldauf, Harris and the City.

Based on the facts alleged, the false-arrest and illegal-seizure claims are properly asserted in a single count, inasmuch as they both arise from the same rights guaranteed by the Fourth Amendment.  *See Lozada v. Weilminster*, 92 F.Supp.3d 76, 98 (E.D.N.Y. 2015) ("A Section

1983 claim for false arrest derives from [a plaintiff's] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause") (citations omitted); *see also Hays v. City of New York*, 14-CV-10126, 2017 WL 782496, at *2 (S.D.N.Y. Feb. 28, 2017) (stating that "[a]s a matter of law, those claims [for false arrest, false imprisonment, and abuse of process] fail if there was probable cause to arrest and prosecute Hays for an offense").

In a lawsuit claiming false arrest, "[t]he burden of establishing the absence of probable cause rests on the plaintiff." *Berry v. Marchinkowski*, 137 F.Supp.3d 495, 524 (S.D.N.Y. 2015) (internal quotation marks omitted). At the summary judgment stage, "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

"Questions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury. However, 'where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court.'" *Dufort v. City of New York*, 874 F.3d 338, 348 (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)) (additional internal citation omitted). *See also Rasanen v. Doe*, 723 F.3d 325, 341 (2d Cir. 2013) ("a jury 'acts only as a fact-finder,' and once any disputed facts are resolved, probable cause is a question of law") (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000)).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. In determining whether probable cause existed for an arrest, a court should consider the "totality of the circumstances" in evaluating whether the "facts available to the officer at the time of arrest" met that standard. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks omitted). If probable cause existed to arrest the plaintiff for any charge, it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *accord Figueroa v. Mazza*, 825 F.3d 89, 99-100 (2d Cir. 2016).

In the case at bar, plaintiff was arrested for harassment in the second degree. Under New York law, a person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person, he (1) strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or (2) follows a person in or about a public place or places; or (3) engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose. N.Y. Penal L. § 240.26.

Plaintiff was also charged with resisting arrest. Under New York law, a person is guilty of resisting arrest when he "intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest." N.Y. Penal Law § 205.30.

In support of their motion for summary judgment, defendants contend that probable cause existed for plaintiff's arrest for harassment and resisting arrest, based on his allegedly "abusive

behavior" toward Delancy, his alleged physical contact with Baldauf, and his behavior when the officers attempted to arrest him.

Based on the record before me, however, the Court cannot rule as a matter of law with respect to plaintiff's false-arrest claim against Baldauf. Ivery and Baldauf have testified to vastly different accounts of the events that led to plaintiff's arrest. There are fact issues.

The Court need not go line-by-line through the parties' testimony to show the discrepancies in their accounts of what happened. But in general, plaintiff claims that he "calmly" walked toward Baldauf and Ivery, and that Baldauf suddenly punched him, and continued attacking him, to the point that plaintiff briefly lost consciousness. Ivery Aff. (Dkt. #31-5) ¶¶ 5-17. On the contrary, Baldauf alleges that the incident was precipitated when plaintiff (who Baldauf had been informed had recently used physical force against his girlfriend) "walked over aggressively" and "poked" Baldauf in the chest. Baldauf testified that when he attempted to grab plaintiff's arm, plaintiff ran, and that Baldauf used a reasonable degree of force to subdue plaintiff. Dkt. #28-3 at 44-46.

While the video recording does show the event—in part—it is not so clear that the Court can decide as a matter of law exactly what happened, or whether probable cause existed for plaintiff's arrest. The encounter was brief and chaotic, and the visual quality of the recording is far from perfect.

The resolution of this claim, then, largely turns on an assessment of the parties' credibility regarding the underlying facts. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F. 3d 1002, 1011 (2d Cir. 1996) (citations omitted). Given the sharply contrasting

accounts of what occurred on the night in question, I conclude that Baldauf's motion for summary judgment must be denied. *See Lanorith v. Truscelli*, No. 15-CV-617, 2017 WL 3634600, at *7 (E.D.N.Y. Aug. 22, 2017) (denying summary judgment where factual disputes existed regarding existence of probable cause for plaintiff's arrest, which could only be resolved through credibility determinations).

I also conclude, however, that this claim must be dismissed as to defendant Harris. It is clear from all the testimony and the video recording that the incident that led to plaintiff's arrest occurred between plaintiff and Baldauf. All the participants testified as much. Harris helped effectuate the arrest, but he was literally not in a position to determine whether probable cause existed.

All the evidence shows is that when the scuffle broke out between plaintiff and Baldauf, Harris was standing some distance away, at night, and did not have a clear view of what was happening, other than the fact that there was a physical altercation and that plaintiff ran away from Baldauf. Under those circumstances, Harris was under no obligation to quiz Baldauf on the spot about what had just occurred. Regardless of whether there was objective probable cause for plaintiff's arrest, then, I see no basis for a false-arrest claim against Harris. *See Cruz v. City of New York*, 232 F.Supp.3d 438, 458 (S.D.N.Y. 2017) (stating that "the law shields an officer from liability for false arrest if the officer relies on a fellow officer who vouches for probable cause") (internal quote omitted).[1]

_____

[1] The issues of the officers' qualified immunity, and the City's liability, are addressed separately, below.

Defendants argue that plaintiff's false-arrest claim is defeated by his subsequent plea to the charges filed against him. But as stated, plaintiff received an ACD, and the charges were eventually dismissed. He did not plead "guilty," and no determination of guilt was made.

The fact that plaintiff eventually received an ACD does not bar his false-arrest claim. An ACD is not the same as a conviction. *See Case v. City of New York*, 233 F.Supp.3d 372, 383 (S.D.N.Y. 2017) ("Unlike a conviction, an ACD leaves open the question of guilt, and does not bar [plaintiff] from pursuing his false arrest claim") (citing *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)) (additional citations omitted). In addition, "recent decisions from the Second Circuit and its district courts indicate that a favorable termination [such as an acquittal] is not a required element for a false arrest claim." *McGowan v. Town of Evans*, No. 15-CV-672, 2017 WL 5633389, at *2 n. 2 (W.D.N.Y. Sept. 13, 2017) (citing cases).

As stated, the existence of probable cause can only properly be determined as a matter of law when there is no dispute as to the pertinent events and the knowledge of the officer. As to Baldauf, the relevant facts here are in dispute, and it is not the Court's role to resolve that factual dispute on a motion for summary judgment. *See Grant v. City of Syracuse*, No. 15-CV-445, 2017 WL 5564605, at *5 (N.D.N.Y. Nov. 17, 2017) (denying summary judgment on plaintiff's false-arrest claim where "Plaintiffs and Defendants sharply dispute[d] what happened" on the evening in question, "as there are material issues of fact as to the circumstances surrounding Alonzo's arrest").

### C.    Excessive Force/Assault and Battery

Plaintiff alleges that his rights under the Fourth Amendment were violated by Baldauf's use of excessive force.  Plaintiff asserts this claim against Baldauf, Harris and the City.  Plaintiff also asserts state-law claims against those defendants for assault and battery.

The standard for assessing a claim of excessive force under § 1983 is one of "objective reasonableness," which "requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  Three primary considerations guide the Court's application of the standard:  (1) the nature and severity of the crime precipitating the arrest; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to flee. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  As to the third factor, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit.  The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000).

Whether probable cause for the arrest existed is not dispositive of an excessive-force claim. *See County of Los Angeles v. Mendez*, 581 U.S. ___, 137 S.Ct. 1539, 1547-48 (2017) (federal law does not dictate "that any Fourth Amendment violation that is connected to a reasonable use of force should create a valid excessive force claim.  Because the excessive force

and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa") (citation and internal quotation marks omitted); *Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006) ("the reasonableness test ... remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest"); *Goonewardena v. Spinelli*, 2017 WL 4280549, at *11 (E.D.N.Y. Sept. 26, 2017) ("Under federal law, when an officer arrests someone without probable cause, the unlawful arrest does not automatically give rise to an excessive force claim").

Under New York law, however, the use of *any* force during the course of an unlawful arrest gives rise to assault and battery claims against the arresting officer. *See Goonewardena v. Spinelli*, No. 15-CV-5239, 2017 WL 4280549, at *10 ("If an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery" under New York law); *accord Loftin v. City of New York*, No. 15-CV-5656, 2017 WL 3614437, at *7 (E.D.N.Y. Aug. 21, 2017) (collecting cases).

As explained above, there is no dispute that Baldauf used some force against plaintiff. But the details of what happened during the course of plaintiff's arrest are not clear, and cannot be determined on a motion for summary judgment. The parties dispute how the confrontation between plaintiff and Baldauf began, and how their physical struggle unfolded.

As stated, the Court cannot properly resolve these disputes on a motion for summary judgment. *See Greenaway v. County of Nassau*, 97 F. Supp. 3d 225, 235 (E.D.N.Y. 2015) ("Because objective reasonableness is extremely fact-specific, summary judgment on the issue [of excessive force] is often inappropriate"); *Jackson v. City of New York*, 939 F. Supp. 2d 235,

254 (E.D.N.Y. 2013) (finding that summary judgment was inappropriate on the issue of excessive force because of the significant dispute between plaintiff's and officers' descriptions of the arrest and force used).

The resolution of this claim, too, depends to a great extent on an assessment of the parties' credibility.  Viewing the evidence in the light most favorable to plaintiff, I conclude that there are genuine issues of material fact concerning whether Baldauf used excessive force against plaintiff.  *See Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("It is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment").

For essentially the same reasons, I find that plaintiff's state-law claims for assault and battery can proceed against Baldauf.  As explained above, Baldauf's use of any degree of force would give rise to assault and battery claims under New York law, if he lacked probable cause for the arrest.  Since the facts surrounding both the arrest itself and the events immediately prior to and during the arrest are in dispute, this claim cannot be dismissed as a matter of law, at this point.

I also find, however, that the excessive-force and assault and battery claims must be dismissed as to defendant Harris.  Assault, under New York law, is "an intentional placing of another person in fear of imminent harmful or offensive contact[,]" while a "battery [is] an intentional wrongful physical contact with another person without consent."  *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006).

While the parties' accounts of what happened differ, there is no evidence from *any* witness that Harris ever struck plaintiff at any time. Plaintiff's claim against Harris is based on his allegation that Harris should have intervened to stop Baldauf from using force against plaintiff.[2]

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)). An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted).

In the case at bar, however, according to plaintiff's own testimony, Harris *did* intervene. Plaintiff has testified that after he was handcuffed, Baldauf punched him again, and Harris said, "Alright, alright." Baldauf then stopped hitting plaintiff. Ivery Aff. (Dkt. #31-5) ¶ 17.

Again, this entire incident lasted a matter of seconds, and Harris was some distance away when it began. All the evidence shows, then, is that a scuffle broke out between plaintiff and Baldauf, plaintiff ran, Baldauf caught up to him, and when Harris arrived, he saw Baldauf and plaintiff struggling with each other. Within seconds, according to plaintiff's own testimony, Harris said, "Alright, alright," and Baldauf stopped hitting plaintiff. Given this evidence, and in

---

[2]There is some evidence that Harris assisted in the arrest, and that he placed handcuffs on plaintiff. But as explained above, he could reasonably have believed that probable cause existed for plaintiff's arrest. At the very least, then, Harris would be entitled to qualified immunity, as explained below.

light of the brief and chaotic nature of this incident, I see no basis in the record for a finding of liability against Harris on these claims.

### D. Conspiracy Claim Against Baldauf and Harris

In his third cause of action, plaintiff alleges that Baldauf and Harris conspired to deprive him of his constitutional rights. The underlying deprivations are those alleged in the other counts: excessive force, false arrest, etc. There is no evidence to support such a claim here.

To prevail on a conspiracy claim under § 1983, the plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

Moreover, this is not a motion to dismiss for failure to state a claim, but a motion for summary judgment. Even assuming *arguendo* that the complaint states a facially valid claim for

conspiracy, plaintiff cannot overcome the motion simply by resting on the allegations of his complaint; "he must come forward with 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Houston v. Zen Zen*, 388 F.Supp.2d 172, 175 (W.D.N.Y. 2005) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986)).

In the context of a civil rights conspiracy claim, "to survive a motion for summary judgment, the non-moving party's evidence of a § 1983 conspiracy must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Gustafson v. Village of Fairport*, 106 F.Supp.3d 340, 352 (W.D.N.Y. 2015) (quoting *Phoenix v. Reddish*, 175 F.Supp.2d 215, 218 (D.Conn. 2001)). In addition, "[t]he mere fact that the individual defendants were all present at the time of the alleged constitutional violations is insufficient to support a conspiracy claim." *Gustafson*, 106 F.Supp.3d at 352. In the absence of any evidence of agreement, summary judgment on a § 1983 conspiracy claim is warranted. *Ostensen v. Suffolk County*, 236 Fed.Appx. 651, 653 (2d Cir. 2007).

Even drawing all reasonable inferences in plaintiff's favor, there is no basis here upon which a reasonable factfinder could conclude that Baldauf and Harris entered into a conspiracy to deprive plaintiff of his constitutional rights. The underlying incident began suddenly, and there is no evidence that it would have occurred at all had plaintiff not approached Baldauf. Plaintiff's unsupported assertion that Baldauf and Harris had reached an agreement to violate his rights "amounts to nothing more than rank speculation and conjecture," and must be dismissed. *Gustafson*, 106 F.Supp.3d at 352 (quoting *Phoenix*, 175 F.Supp.2d at 218).

I also agree with defendants' argument that the conspiracy claim is barred by the intra-corporate conspiracy doctrine. Under that doctrine, "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Quinn v. Nassau County Police Dep't*, 53 F.Supp.2d 347, 359 (E.D.N.Y. 1999). Although plaintiff relies on the exception where the individual defendants, despite being a part of the same entity, "are pursuing personal interests wholly separate and apart from the entity," *id.*, that is a "narrow exception" that does not apply here. *McRae v. City of Hudson*, No. 14-CV-236, 2015 WL 275867, at *8 (N.D.N.Y. Jan. 21, 2015). Baldauf and Harris were acting throughout under color of law, in the scope of their employment. *See id.* (noting that plaintiff's "only interaction with these individual defendant officers is through their professional duties, which they carried out under the color of law. There is no suggestion they had a personal connection to him or were motivated by personal reasons wholly separate and apart from" their employment as police officers). *See also Demosthene v. City of New York*, No. 14 CV 816, 2015 WL 5093116, at *6 (E.D.N.Y. June 26, 2015) (discussing intra-corporate conspiracy doctrine and concluding that plaintiff's conspiracy claims against police officers based on alleged false arrest and failure to intervene should be dismissed), *appeal dismissed*, 2015 WL 5093164 (2d Cir. Mar. 16, 2016).

### E. Emotional Distress and Negligence Claims

Plaintiff has asserted claims against Baldauf, Harris and the City for intentional and negligent infliction of emotional distress. (Complaint Counts 8 and 9.) Plaintiff has also asserted, as an alternative to his other intentional-tort claims, a generic negligence claim against all defendants. (Complaint Count 10.)

"Under New York law, intentional infliction of emotional distress requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Warr v. Liberatore*, No. 6:13-CV-6508, 2017 WL 3872491, at *11 (W.D.N.Y. Sept. 5, 2017) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)). "A plaintiff may recover for the negligent infliction of emotional distress when a defendant owes 'a direct duty to the plaintiff ... and a breach of that duty results in emotional injury.'" *Sankara v. O'Hara*, No. 15-cv-7761, 2017 WL 6001841, at *7 (S.D.N.Y. Dec. 4, 2017) (quoting *Green v. Leibowitz*, 118 A.D.2d 756, 757 (2d Dep't 1986)).

For both negligent and intentional infliction of emotional distress, a plaintiff must show "that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Berrios v. Our Lady of Mercy Med. Ctr.*, 20 A.D.3d 361, 362 (1st Dep't 2005). In New York, claims for intentional infliction of emotional distress are "extremely disfavored," and "[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish" such a claim. *Medcalf v. Walsh*, No. 12 Civ. 509, 2013 WL 1431603, at *7 (S.D.N.Y. Apr. 9, 2013); *see also Tebbenhoff v. Elec. Data Sys. Corp.*, 244 Fed.Appx. 382, 384 (2d Cir. 2007) (observing that New York's standard for extreme and outrageous conduct is "rigorous, and difficult to satisfy"); *Semper v. New York Methodist Hosp.*, 786 F.Supp.2d 566, 586 ("this highly disfavored cause of action is almost never successful") (internal quotes omitted).

"Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). *See also Margrabe v. Sexter & Warmflash, P.C.*, 353 Fed.Appx. 547, 550 (2d Cir. 2009) (noting that "a court may decide whether alleged conduct is sufficiently outrageous as a matter of law").

Based on plaintiff's allegations and the evidence before me, the only imaginable basis for these claims in this case would be Baldauf's use of force against plaintiff. But even assuming, without deciding, that Baldauf's conduct in that regard could be considered "extreme and outrageous," these claims cannot stand, for another reason.

"A claim for intentional infliction of emotional distress 'is generally unavailable where other traditional tort remedies are available.'" *Casaccia v. City of Rochester*, No. 17-cv-6323, 2018 WL 324420, at *7 (W.D.N.Y. Jan. 8, 2018) (quoting *Warr*, 2017 WL 3872491, at *11 (W.D.N.Y. Sept. 5, 2017)). Thus, "state courts and federal district courts in this Circuit 'have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory.'" *Caravalho v. City of New York*, 13 Civ. 4174, 2016 WL 1274575 at *23 (S.D.N.Y. Mar. 31, 2016).

Since plaintiff's excessive-force claim against Baldauf survives, this claim must be dismissed. *See, e.g.*, *Bradshaw v. City of New York*, No. 17 Civ. 1199, 2017 WL 6060781, at *20 (S.D.N.Y. Dec. 7, 2017). *See also Brewton v. City of New York*, 550 F.Supp.2d 355, 370 (E.D.N.Y. 2008) ("Even if the plaintiff's false arrest qualified as extreme and outrageous, to the extent that the plaintiff contends she suffered emotional distress as a result of the false arrest, her

claim is encompassed entirely within other tort remedies and is thus precluded under New York law") (internal quotes and alterations omitted).

Similarly, "[u]nder New York law, [w]hen a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Casaccia*, 2018 WL 324420, at *8 (quoting *Naccarato v. Scarselli*, 124 F. Supp.2d 36, 44 (N.D.N.Y. 2000)). *See*, *e.g.*, *Casaccia*, 2018 WL 324420, at *8 ("In this case, the conduct that gives rise to Plaintiff's excessive force and assault and battery claims is also the conduct on which his negligent infliction of emotional distress claim relies, and that claim therefore must be dismissed"); *Gashi v. County of Westchester*, 02 cv 6934, 2007 U.S. Dist. LEXIS 19789 (S.D.N.Y. Mar. 12, 2007) ("[A] negligence claim may not be maintained where it is based on the same objectionable conduct supporting plaintiff's cause of action for excessive force"). For these reasons, plaintiff's negligent infliction of emotional distress claim must be dismissed as well.[3]

For essentially the same reason, plaintiff's tenth cause of action, which asserts a negligence claim against all the defendants, must also be dismissed. I recognize that this claim is asserted in the alternative to plaintiff's other claims, "[i]n the event it is determined that the alleged actions of Defendants were not intentional ... ." Complaint ¶ 130. But there is simply no evidence here to support a generalized claim of negligence against defendants. Plaintiff's claims are plainly based on intentional acts. He does not allege that Baldauf accidentally hit him, or that defendants were simply not paying attention to what was going on. He alleges that Baldauf

---

[3]My conclusions in this regard render it unnecessary for the Court to determine whether any of defendants' acts were or could be considered sufficiently "extreme and outrageous" to support an emotional-distress claim.

intentionally struck him, repeatedly, and arrested him without probable cause. To the extent that his allegations could be read as asserting that either Harris, the City, or Sheppard was negligent, this claim is dismissed for lack of evidence and as duplicative of plaintiff's other causes of action.

F.    Qualified Immunity

Defendants Baldauf and Harris also move for summary judgment on the ground that they are entitled to qualified immunity. Qualified immunity shields public officials from an action for civil damages, to the extent that their challenged acts do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Specifically, the doctrine applies where it is "objectively reasonable" for an official to believe that his conduct did not violate such a right, in light of clearly established law and in the information possessed by the official. *See Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995); *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994). In determining whether defendants are entitled to qualified immunity, the Court must focus on "objective circumstances rather than an officer's subjective motivation." *Bradway v. Gonzales*, 26 F.3d 313, 319 (2d Cir. 1994).

To the extent that the Court has found that defendants are entitled to summary judgment, there is no need for me to rule on their qualified-immunity arguments. But in general, I conclude that their qualified-immunity defense does not alter the result here, on any of plaintiff's claims.

With respect to claims relating to false arrest, an arresting officer is entitled to qualified immunity if: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable-cause

test was met.  *See Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995); *Wachtler v. County of Herkimer*, 35 F.3d 77, 81 (2d Cir. 1994); *Brown v. Ontario County*, 787 F.Supp.2d 273, 276 (W.D.N.Y. 2011).

As to Baldauf, if plaintiff's version of the underlying events is correct, and Baldauf initiated the incident by punching plaintiff without provocation or warning, when plaintiff had done nothing more than walk over "calmly," then clearly it would not have been objectively reasonable for Baldauf to believe that probable cause existed to arrest plaintiff for harassment, or for the ensuing arrest for resisting the initial, unlawful arrest.  *See Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) ("[T]he crime of resisting arrest does not occur if the arrest is illegal or unlawful") (citing *People v. Stevenson*, 31 N.Y.2d 108, 111 (1972)).

As to the excessive-force claim, as stated, the facts are in dispute about exactly what Baldauf did in the first place, much less whether he might reasonably have believed that the force he used was justified, based on the facts known to him at the time.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996)).  If Baldauf gratuitously punched and kicked plaintiff, in the course of an unlawful arrest, then he would presumably not be entitled to qualified immunity.  But if the facts were as Baldauf described them, and plaintiff had been behaving in a verbally and physically aggressive, threatening manner, then Baldauf may well have reasonably believed that the force he used was necessary.

The qualified-immunity analysis further supports the dismissal of the claims against Harris, however.  As explained above, the evidence shows that Harris had reasonable grounds to believe, correctly or not, that probable cause existed for plaintiff's arrest.  Harris testified that he did not know whether plaintiff had shoved or pushed Baldauf.  Harris Depo. (Dkt. #28-3 Ex. H)

at lines 16-19. Having reviewed the video recording and the other evidence, I see no basis to question that assertion. What is clear is that Harris was suddenly confronted with a foot chase and physical struggle between a fellow officer and a citizen, not knowing exactly what happened immediately beforehand. In those circumstances, Harris is entitled to qualified immunity. *See McKnight v. Vasile*, No. 11-CV-6328, 2017 WL 1176051, at *22 (W.D.N.Y. Mar. 30, 2017) (defendant officer "Nicholls was not required to second-guess [his fellow officer's] decision to arrest plaintiff, nor was he required to establish probable cause independently before rendering assistance. Under these circumstances, Nicholls is entitled to qualified immunity for false arrest and false imprisonment").

### G. Claims Against the City and Sheppard

Even construing the record in the light most favorable to plaintiff, I conclude that his claims against the City and Sheppard must be dismissed. The undisputed facts do not provide a basis for a claim of municipal liability, nor do they support an inference of Sheppard's personal involvement in the alleged violations.

With respect to the City, it is well established that "[t]here is no *respondeat superior* liability under § 1983." *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996). In other words, the City cannot be held liable based on the mere fact that one of its employees violated the plaintiff's civil rights.

Rather, to succeed on a claim against a municipality, the plaintiff must show that "the alleged unlawful action [was] implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir. 2007) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). The governmental policy or custom can either have

24

been formally enacted by lawmakers, or established by so-called "policymakers," *i.e.*, government officials whose edicts or acts may fairly be said to represent official policy. 436 U.S. at 694.

To hold supervisory defendants like Chief Sheppard individually liable, the plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation. *Yevstifeev v. Steve*, 860 F.Supp.2d 217, 224 (W.D.N.Y. 2012). Generally, a defendant's personal involvement may be established in one of four ways: (1) direct participation; (2) learning of the deprivation but failing to remedy the wrong; (3) creating a policy or custom under which the deprivation occurred, or allowing such a policy or custom to continue; or (4) gross negligence in managing subordinates who caused the deprivation. *Aguirre v. Kendra*, 123 F.Supp.3d 419, 423 (W.D.N.Y. 2015).

In the case at bar, plaintiff alleges that he "did not file a citizen complaint" with the RPD, because Sheppard told plaintiff that he, Sheppard, was "going to look into this." Ivery Aff. (Dkt. #31-5) ¶ 33. Plaintiff alleges that he "never did hear back" from Sheppard. *Id.*

As plaintiff's papers relating to the pending motions demonstrate, his theories of liability against Sheppard and the City are closely related.. *See* Plaintiff's Mem. (#31-6) at 16-18 (discussing Sheppard's alleged actions, with respect to plaintiff's claims against both the City and Sheppard). In general, they relate to the City's and Sheppard's alleged indifference to claims of excessive force by RPD officers.

In support of his claims, plaintiff asserts that the RPD has failed to investigate past cases of excessive force. In support of that allegation, plaintiff has cited several actions brought in this Court. The records in none of those cases support plaintiff's claims here.

25

In *Turner v. City of Rochester*, 11-CV-6200, the parties settled the action before trial. There was no admission of liability or wrongdoing by either side. The same is true of *Libbett v. City of Rochester*, 12-CV-6697. In *Jones v. City of Rochester*, 12-CV-6082, a jury returned a verdict in favor of the four individual RPD officer defendants. The other cases cited by plaintiff are similar, and do not indicate that defendants turned a blind eye to past alleged uses of excessive force by RPD officers.

In short, plaintiff has cited a handful of past cases in which similar allegations were made, but never proved. As recently stated by another district court from this circuit, "a plaintiff's citation to a few lawsuits involving claims of alleged [constitutional violations] is not probative of the existence of an underlying policy by a municipality." *Harris v. City of Newburgh*, No. 16-CV-2731, 2017 WL 4334141, at *5 (S.D.N.Y. Sept. 27, 2017) (citing cases).

Regarding Sheppard, his alleged statement that he would "look into" plaintiff's claims is not enough to give rise to a genuine issue of material fact, sufficient to defeat defendants' motion for summary judgment. Assuming that statement was made, plaintiff has not alleged the context in which Sheppard made the statement, what he actually knew about the incident, or what if anything happened afterwards. At the summary judgment stage, that is not sufficient. No reasonable factfinder could conclude, based on that bare allegation, that Sheppard was "personally involved" in the alleged deprivation, under the standards laid out above.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #28) is granted in part and denied in part.

All of plaintiff's claims against defendant Rickey Harris, James Sheppard, and the City of Rochester are dismissed.

Plaintiff's claims against defendant Alexander Baldauf for conspiracy (Count 3), intentional infliction of emotional distress (Count 8), negligent infliction of emotional distress (Count 9), and negligence (Count 10), are dismissed.

In all other respects, defendants' motion for summary judgment is denied. Therefore, the only claims remaining are plaintiff's claims against defendant Baldauf for false arrest/illegal search and seizure (Count 1), excessive force (Count 2), battery (Count 6), and assault (Count 7).

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      February 14, 2018.