UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DWAYNE IVERY,

                                        Plaintiff,

                    v.

ALEXANDER C. BALDAUF,

                                        Defendant.
_____

                                        <u>DECISION AND ORDER</u>

                                        14-CV-6041L


        The sole remaining defendant in this case, Officer Alexander C. Baldauf ("Baldauf")
moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute, failure
to comply with numerous Court orders, and failure to appear at a day-certain trial.   (Dkt. #68).
The motion is GRANTED and the Complaint is dismissed with prejudice.

        The Complaint in this action was filed in January 2014.   Plaintiff was represented by
Charles F. Burkwit, an attorney experienced in civil rights litigation.   The Complaint was based
on events occurring on August 17, 2013, at plaintiff Dwayne Ivery's ("Ivery") residence in
Rochester, New York.   Officer Baldauf and another officer responded to that address based on a
911 telephone call from plaintiff's then-girlfriend Winnette Delancy.   The matter involved a
dispute between the couple over a motor vehicle.   Officer Baldauf alleged that Ivery became
abusive, shouting obscenities at the officers and there was an altercation between them and
Baldauf, which lasted about 30 seconds and resulted in plaintiff's arrest and removal from the
property.

The Complaint alleged false arrest and excessive force.  The case proceeded through discovery and a mediation proceeding, which failed to produce a settlement (Dkt. #41).

After a lengthy period of discovery, defendants moved for summary judgment and in a 27-page Decision and Order (Dkt. #42), entered February 14, 2018, this Court granted defendants' motion for summary judgment, in substantial part, and dismissed all the claims against co-defendants Ricky J. Harris, Jr., James M. Sheppard, and the City of Rochester.  Four claims against Officer Baldauf were dismissed as well.  Because there were issues of fact, the Court denied summary judgment as to plaintiff's Fourth Amendment claims, including false arrest and excessive force.

Soon after that decision, the Court scheduled a status conference on June 12, 2018, at which time the Court set a firm trial date of August 27, 2018.  Two days later, on June 14, 2018, the Court issued its Pretrial Order (Dkt. #45).  That Pretrial Order confirmed the trial date of August 27, 2018 and indicated that it was a day-certain trial date, which would not be adjourned.

Thereafter, the Court received a letter from plaintiff's counsel, Burkwit, indicating that plaintiff wished to terminate him.  The Court therefore held a status conference on July 9, 2018 (Transcript at Dkt. #56).  At that conference, Ivery acknowledged that he had hired Burkwit, who had represented him for over four years.  Ivery claimed he needed another attorney to assist Burkwit or take over the case.  According to Burkwit, plaintiff did not feel the case was ready for trial and therefore plaintiff wanted new counsel.  Ivery indicated at the conference that he had contacted some other attorneys, but did not provide the Court with any names.  By the end of the conference, it was clear that Ivery no longer wished to retain Burkwit and would take steps to obtain another lawyer.  It was also disclosed at that conference that plaintiff owed Burkwit $5,263 for disbursements that had been incurred to date in the case.  The Court reluctantly relieved

2

Burkwit from further responsibility on the file and adjourned the trial without date.   This was the first of two day-certain trials that had to be adjourned because of Ivery's actions.

In addition to adjourning the trial and relieving Burkwit, plaintiff was ordered to advise the Court by letter on or before July 31, 2018, as to the status of his efforts to obtain new counsel. Plaintiff failed to advise the Court as directed by July 31, 2018, as to new counsel.   This was the first of numerous orders that Ivery refused or neglected to follow.   In fact, about a year passed and plaintiff took no further action to obtain a lawyer and proceed on the case.

Therefore, the Court scheduled a status conference for June 10, 2019.   At the conference, plaintiff appeared without counsel.   The Court's notes and the transcript of proceedings reflects that the Court reminded Ivery that he had failed to comply with the Court's prior order that he was to advise the Court of the status of counsel.   The Court noted that the case had been pending almost a year since attorney Burkwit had been relieved.   The Court advised Ivery that there appeared to be lawyers in the area that might take such a case.   Once again, I set a deadline and gave Ivery 60 days in which to obtain a lawyer or be prepared to proceed at trial *pro se*.   I also directed Ivery to make a formal demand for settlement.   Ivery did make a written demand for settlement, in a filing on July 24, 2019 (Dkt. #50), requesting $3,000,000 to settlement the case. This excessive and unrealistic demand did not lead to settlement of the case.

August 12, 2019 came and went and once again, Ivery had failed to comply with this Court's Order that he was to advise the Court by that date as to whether he had obtained new counsel or was intending to proceed *pro se*.   This was another order that Ivery failed to follow. That behavior would continue through the balance of the case.

Because plaintiff had been without counsel for almost 18 months and had ignored several orders from the Court to obtain counsel or proceed *pro se*, to assist plaintiff, the Court entered an

Order on January 21, 2020, appointing two attorneys, Adam Sanderson and Conor Tallet, to represent plaintiff *pro bono*.   (Dkt. #53).   These attorneys were members of a well-recognized litigation firm, Thomas & Solomon LLP.

A few days after that appointment, on January 27, 2020, the Court held a status conference. Several important matters occurred at that conference, which are reflected in the Court's notes and the transcript of proceedings.   First, the Court scheduled a day-certain trial seven months away, on August 17, 2020.   Plaintiff was also directed to advise the Court within two weeks if he accepted the assignment of attorneys Sanderson and Tallet.   If he did not wish to accept the assignment, he needed to obtain new counsel or be prepared to proceed *pro se*.   The next day, on January 28, 2020, the Court issued another Pretrial Order (Dkt. #54) indicating that a firm day-certain trial was scheduled for August 17, 2020.   The Court also scheduled a pretrial conference on August 10, 2020.   That Pretrial Order required the plaintiff to provide several things at the pretrial conference, including a list of witnesses, proposed *voir dire* questions, a complete exhibit list, and an itemized statement of damages.   Once again, that Pretrial Order advised that the trial was a day-certain case which would not be adjourned.

Ivery did not advise the Court within two weeks if he accepted counsel.   The Court heard nothing further from plaintiff and it appears that the assigned attorneys began to work diligently for plaintiff in preparation for the August 17, 2020 trial.   Unfortunately, approximately four months after the January 27, 2020 status conference, the Court received a letter from assigned counsel (Dkt. #57) reporting that plaintiff now wished to fire them from continued representation.

Upon receipt of that letter, the Court sent a pointed letter to plaintiff dated May 14, 2020 (Dkt. #58) and reminded plaintiff of the day-certain trial scheduled for August 17, 2020 and noted that this was the second lawyer that plaintiff wished to discharge, the first being Charles Burkwit.

4

I advised plaintiff that the Court appointed the lawyers as a favor to plaintiff since he had been unable or unwilling to obtain a lawyer, reminded plaintiff that trials in federal court are complex, directed plaintiff to advise the Court within a week if in fact he wished to discharge the lawyers. The Court reminded Ivery that he must be prepared for trial on August 17, 2020.

On May 28, 2020, the plaintiff requested additional time to get a lawyer (Dkt. #59).   The Court wrote to plaintiff by letter dated July 21, 2020 (Dkt. #61).   The Court confirmed that plaintiff did not wish to be represented by attorneys Sanderson and Tallet, but warned plaintiff that trial was scheduled for August 17, 2020 and that he "must be prepared to proceed to trial on that day with or without an attorney."   By that letter, I relieved attorneys Sanderson and Tallet from further responsibility on the file.

Within a week, the Court sent a follow-up letter dated July 27, 2020 (Dkt. #62) to Ivery. I indicated, once again, that the Court had not heard from Ivery as to whether he had obtained a lawyer.   I advised plaintiff that in spite of the COVID-19 virus, we would be able to proceed to trial on August 17, 2020, with jury selection.   I also reminded plaintiff that he must appear at the pretrial conference on August 10, and that jurors had been notified to appear for trial.   Finally, I warned plaintiff that he must be prepared to attend and participate in the pretrial conference and jury selection and trial on August 17, and he was warned in bold letters that: "FAILURE ON YOUR PART TO DO SO WILL RESULT IN THE DISMISSAL OF THIS ACTION."   (Dkt. #62).   Plaintiff wrote to the Court by letter dated July 30, 2020 (Dkt. #60) indicating that he did not have an attorney, but "perhaps" there may be one by the pretrial conference date.   Plaintiff stated his opinion that there could not be a trial ready to commence on August 17, 2020.

Ivery did appear at the scheduled Pre-trial Conference on August 10, 2020.   At that conference, the Court asked Ivery about counsel and was advised that he was "working on it."

The Court noted that it had been hearing that same refrain for the past two years.   Ivery stated that he could not represent himself, and he repeatedly talked over the Court during the balance of the conference.   The Court reminded Ivery that over two years ago, in June 2019, he was advised either get a lawyer or represent himself.   I noted again that to assist Ivery, I had appointed not one, but two lawyers in January 2020 to represent him and that once again, the Court had set a trial date for August 17, 2020.   Ivery complained that the two attorneys urged him to settle the case. The Court reminded Ivery that the case had been set for trial over eight months ago and that Ivery had caused the problems.   Although defense counsel handed over to plaintiff the required trial book as directed by the Pretrial Order, Ivery produced no documentation and failed to comply with the Pretrial Order.   The Court warned plaintiff that the case would go to trial on August 17, 2020, with or without a lawyer, and that the case would be tried on that day or it would be dismissed.

As part of plaintiff's concerted effort to avoid going to trial on the scheduled date, plaintiff appeared at the Clerk's Office on Friday, August 14, 2020, advising a staff member that he had a "death in the family" and would be unable to attend Court on Monday, August 17, 2020.   It is unclear why plaintiff went to the Clerk's Office rather than contacting the Court's chambers directly.   In any event, the Clerk's employee advised this Court's staff and plaintiff was told that he must report as directed on August 17, 2020.

On August 17, 2020, the scheduled trial date, Ivery appeared but without counsel.   Ivery claimed that he had talked to a lawyer the past Friday.   The Court reminded Ivery that had been advising the Court for years that he was going to get an attorney but never did so.   The Court reminded Ivery that last week he was advised either get an attorney or represent himself.   Once again, the Court reiterated the day-certain trial had been set months ago and that Ivery was warned numerous times of that date.   At the conference, Ivery kept talking over the Court to the extent

6

that he had to be admonished and warned that the case could be dismissed for that behavior.   The Court denied Ivery's request to adjourn the trial further.   At that point, Ivery claimed some discomfort and requested leave to sit down.   The Court then advised plaintiff and defense counsel that jury selection would commence the next day, August 18, 2020.

The Court then adjourned but a few minutes later, defense counsel returned to Court and advised that plaintiff had squared off aggressively toward Officer Baldauf in the hallway outside the courtroom.   On that day, the Court advised the Jury Commissioner to have jurors report the next day, August 18, 2020, to begin jury selection.

On August 18, 2020, defense counsel and his client appeared, as did the jurors.   But plaintiff failed to appear.   The Court reported that someone identifying herself as "plaintiff's fiancé" left a message on the Court's voicemail at 8:01 a.m., indicating that plaintiff was at Rochester General Hospital complaining of health issues.

The next day, the Court issued an Order (Dkt. #66) scheduling a status conference with the parties for September 8, 2020.   In that scheduling order, the Court noted that the very next day after the scheduled trial on August 18, 2020, Ivery had telephoned the Court's chambers advising that he was home and out of the hospital.   Plaintiff was ordered to show cause and produce "a medical excuse and/or medical record to justify his failure to appear at a court-ordered jury trial on August 18, 2020."   (Dkt. #66).   Plaintiff was also ordered to show cause on or before August 31, 2020, as to why the Court should not dismiss the case for failure to prosecute.   In that Order, plaintiff was advised, once again, in bold letters, that if he failed to appear or failed to produce a medical excuse or failed to respond to the Court's Order to Show Cause by August 31, 2020, the Court could dismiss the case for failure to prosecute.

Once again, plaintiff failed to comply with the Court's Order.   Plaintiff did not respond by August 31, 2020, to the Court's Order to Show Cause as to why the case should not be dismissed. Plaintiff also failed to provide any medical excuse or medical record by that date.

On September 8, 2020, plaintiff did appear, again without counsel.   Plaintiff repeated the flimsy claim that he was "about to" retain an attorney, although no name was provided to the Court. The Court once again reminded Ivery that I had been hearing that claim for over two years.   I repeated the facts that Ivery's first attorney, Burkwit, had been fired over two years ago and that Ivery had failed to comply with several court orders to advise the Court about the status his attorney search.   The Court reminded Ivery that the firm trial date of August 17, 2020 had been set.   The Court noted that it was easy to walk into an emergency room and I found that that was simply an attempt not to go to trial as ordered.

The Court noted that plaintiff's activities were wasting the Court's time and that Ivery had consistently taken steps to avoid trial as ordered to do so.   At that time, defense counsel orally moved to dismiss the case for failure to prosecute.[1]   The Court did not grant the motion from the bench at that time, although the Court did advise Ivery that it was close to dismissing the case because Ivery was not serious about the case and was not prepared.

A few days later, on September 18, 2020, defendant filed the present motion to dismiss for failure to prosecute (Dkt. #68).   Plaintiff did file a response to the motion to dismiss (Dkt. #70). In that response, plaintiff claimed, without basis, that he had complied with "every court order" as required.   He also suggested problems because defense counsel did not reply to his $3,000,000 demand letter and claimed that it was defense counsel that was "gaming the court."   He also

---

[1]   Defense counsel did move orally on September 8, 2020 to dismiss the case.   The Court did not grant the motion at that time but after reviewing defense counsel's written filed motion (Dkt. #68), the exhibits attached thereto, and after a thorough review of all of the lengthy proceedings in this case, the motion to dismiss is warranted and granted.

claimed, without any factual basis, that the assigned attorneys failed to provide proper assistance. Defense counsel duly filed a Reply Declaration (Dkt. #73).

## DISCUSSION

A Court should not lightly dismiss a case for failure to prosecute.   The facts in this case, though, demonstrate a long-standing pattern of plaintiff's failure or refusal to comply with court orders culminating in his refusal or failure to attend trial on August 18, 2020.   Plaintiff has claimed that he does not have the ability to prosecute his case *pro se*, but he has done everything possible to fire attorneys, one that he retained, and two others that were appointed for him.   He has refused or neglected to obtain new counsel, although it has now been almost three years since the Court relieved his original retained lawyer, Charles Burkwit.   Plaintiff has given numerous excuses concerning counsel and has claimed on numerous occasions that he is about to retain an attorney, but he never does so.   This Court has set reasonable deadlines for either obtaining counsel or indicating that plaintiff was prepared to proceed *pro se* and plaintiff has ignored each and every order.

The Court has urged plaintiff repeatedly of the need to obtain counsel in a complex case in federal court.   Plaintiff had an experienced civil rights attorney when he retained Charles Burkwit, but for no apparent valid reason, he discharged Burkwit, owing him over $5,200 in disbursements. I have no evidence whatsoever that he has paid one dollar toward those disbursements.   Plaintiff's late firing of Mr. Burkwit required the Court to adjourn the first trial scheduled as a day-certain on August 27, 2018,   The Court was generous on that occasion and could have insisted then that plaintiff represent himself.   Rather, the Court gave plaintiff numerous extensions to get counsel

and when he failed to take reasonable steps to do so, the Court appointed two lawyers from a distinguished litigation firm to handle his case *pro bono*.

Plaintiff worked with those attorneys for several months and the matter was proceeding toward trial on August 17, 2020 when, close to the time when trial was scheduled, plaintiff found some reason to be dissatisfied with those attorneys and discharged them.   This Court made it clear on multiple occasions that the trial date of August 17, 2020, was a day-certain and that plaintiff must be prepared to proceed either with counsel or *pro se* or the case could be dismissed.

Plaintiff appeared at the pretrial conference on August 10, 2020, totally unprepared and failed to provide the necessary documents required in the Pretrial Order, including a list of witnesses, itemization of damages, and other items.   It was clear on that date that plaintiff was unwilling to proceed to trial on August 17, 2020, since he did not have counsel and was not inclined to proceed *pro se*.

I believe that the record is crystal clear that plaintiff took several steps to avoid going to trial.   The first was his claim that he needed to "attend a funeral" on August 17, 2020 for a person who was not identified.   Plaintiff was advised that that was not a valid excuse and was directed by a member of the Clerk's staff that he must attend court proceedings on that date.   Since that ploy did not work, I believe the record is clear that plaintiff took it upon himself to go to a hospital on the trial date complaining of "chest pains" believing that that would constitute a legitimate reason for not appearing for trial.   It does appear that plaintiff did take himself to the hospital that day, but the materials submitted failed to indicate that plaintiff was in any legitimate distress.   It is quite easy to drive oneself to the hospital complaining of "chest pains," but this appears to be nothing more than an obvious gambit to avoid his responsibility to proceed at trial on August 18, 2020.   Ivery was not ready and tried several stunts to avoid trial.

The documents submitted by plaintiff in his response to defendant's motion to dismiss do little to suggest a significant medical problem. The first document attached to his response is a record of a doctor's visit in October 2020, <u>six weeks</u> after the scheduled trial date, which seemed to relate to back pain. There was a document from Rochester General Hospital indicating that plaintiff did appear there, but there is no significant medical evidence that what he suffered was anything more than mere anxiety over being required to proceed to trial according to a court order.

Defendant has moved to dismiss the case for failure to prosecute and for failure to comply with the Court's numerous orders, including an order to proceed to trial on August 17, 2020 and August 18, 2020. The Court should not grant such a motion lightly, but Ivery's conduct in this case demonstrates a clear and calculated pattern of ignoring court orders and raising bogus claims to avoid trial on August 17, 2020.

The standards for a court to consider in granting a motion to dismiss under Rule 41 are clear and well established. The Second Circuit has held that in evaluating a motion to dismiss for failure to prosecute under Fed. R. Civ. P. 41(b), a district court must weight five factors: (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the court has adequately considered a sanction less drastic than dismissal. *Jefferson v. Webber*, 777 Fed. App'x 11, 14 (2d Cir. 2019) (citing *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014)). Those factors plainly weigh in favor of dismissal here. Ivery's conduct satisfies all of the tests for granting this motion in a case filed seven years ago.

Plaintiff had the help of not one, but three lawyers over the course of several years working toward trial on the few remaining claims that exist after the Court granted summary judgment. Plaintiff has done everything possible to jeopardize his case by failing to proceed with those lawyers.

Plaintiff has been warned countless times by this Court on the record that he must obtain counsel or proceed *pro se*.   The trial date was scheduled months in advance for August 17, 2020 and plaintiff was well advised of that date and of the consequences for failing to appear.   The excuses of a "death in the family" or medical issues appear to be blatant fabrications to excuse plaintiff's failure to comply with a court order.

On August 18, 2020, defendant and his counsel were present, as were many jurors necessary for jury selection.   Plaintiff took it upon himself not to appear for what this Court finds to be a bogus reason.

This trial involves an incident involving the arrest of plaintiff, which took about 30 seconds according to testimony at a deposition.   To my knowledge, plaintiff has never set out in detail the injuries he claims to have received from that brief encounter.   It also appears that his settlement demand of $3,000,000 is grossly inconsistent with the facts of the case.   I believe that it is clear that plaintiff has a much higher estimation of the value of his case than is realistic and it appears that his valuation is not shared by any of the attorneys that represented him.   This Court urged plaintiff to consider settlement.   I suspect that all of the attorneys were working toward that, but it appears clear that plaintiff was not inclined to work with the attorneys toward a reasonable settlement based on the objective facts.

This case has been pending for over seven years; many of the claims have been dismissed on summary judgment because they lacked merit and the only remaining claims against the one

remaining defendant, Baldauf, were scheduled for trial on two occasions, but because of plaintiff's acts, those trials were not able to proceed.   Years have passed while plaintiff has claimed that he was seeking to obtain a lawyer, but plaintiff has been unwilling or unable to obtain counsel.   Over the course of this case, plaintiff had not one, but three lawyers assisting in prosecuting the case. Ivery fired them all for no apparent reason.   Plaintiff bears the responsibility for that since there does not seem to be a valid reason for plaintiff's disenchantment with the lawyers, one of whom he retained.   That attorney, Charles Burkwit, has extensive experience in civil rights litigation, including alleged excessive force actions against law enforcement officials.

The record here is replete with examples where the plaintiff failed to comply with court directives to either obtain an attorney or respond to other court orders.   It was clear at the pretrial conference on August 10, 2020 and on August 17, 2020, that plaintiff had no lawyer and was unable and unwilling to proceed to trial on the scheduled date of August 17 or August 18, 2020. It is clear that plaintiff took what he thought to be a clever step by visiting the hospital on the day of trial complaining of an "illness" which has not been documented in any legitimate sense.

I have considered whether other sanctions might be appropriate in this case, but in light of the outrageous acts by Ivery, none appear appropriate or adequate.   Ivery has been warned repeatedly that this case could be dismissed.

I also note that it is unfair to the defendant to have this matter pending for over seven years without a resolution.   In addition to the parties, there were other witnesses to the incident and memories could certainly fade after such a lengthy delay.

Court orders and court deadlines mean something whether one is represented by counsel or not.   Plaintiff's actions did not involve just one instance of a neglect or refusal to comply with court orders, but numerous occasions when orders and directive were ignored and plaintiff

blatantly failed to proceed for a trial that had been scheduled for many months; in fact, the second such day-certain trial that failed to occur because of plaintiff's action, or perhaps more accurately, his *in*action.

Even today, nine months after plaintiff's failure to appear for trial on August 18, 2020, plaintiff still remains without counsel and is in no better position to try this case *pro se*.

## CONCLUSION

Defendant Alexander C. Baldauf's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 41(b) is GRANTED, and the Complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 27, 2021.

14